McGREGOR W. SCOTT
United States Attorney
JILL M. THOMAS
Assistant U.S. Attorney
501 I Street, Suite 10-100
Sacramento, California 95814
Telephone: (916) 554-2781

FILED

AUG 18 2008

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
       DEPUTY CLERK

# SEALED

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: SEARCH OF MOTOROLA CELLULAR PHONE FOUND ON ELIAZAR BARRAZA TORRES (MSN G296JAFJGB) AND A "MOTOROLA RAZOR" (MSN D54GGJ4PZD), A MOTOROLA 1425 (MODEL NUMBER H98XAH6JRZAN) AND A MOTOROLA CELLULAR PHONE (HEX NUMBER 14D54931) FOUND ON AGUSTIN TORRES BELTRAN | CASE NO. 08-SW-0201 GGH<br><br>MOTION AND [PROPOSED] ORDER ALLOWING EXTENSION OF DELAYED NOTICE<br><br>**UNDER SEAL** |

For the reasons articulated in the attached Affidavit of DEA SA David Klingman dated May 20, 2008 and attached hereto, the United States respectfully requests that the Court order that the United States not be required to provide notice of the execution of the above-captioned Search Warrant until November 14, 2008, which is an extension of an additional 90 days from the previously ordered date of May 20, 2008. 18 U.S.C. § 3103a.

The purpose of the search warrant was to discover additional information inside the cellular telephones related to narcotics trafficking and its related proceeds, including but not limited to text messages and the addresses and names of other potential

criminal targets. The investigation is continuing. Thus, immediate notification would seriously jeopardize the investigation by alerting the cellular telephone user of the existence of an covert criminal investigation into narcotics trafficking activities. 18 U.S.C. §§ 2705(a)(2); 3103a(b)(1).

A 90-day extension in the delay of notification is permissible. 18 U.S.C. § 3103a(b)(3) and (c). As found by the magistrate on May 20, 2008, there was reasonable necessity for the seizure of the cellular phones and subsequent search of the stored electronic information as described in the Affidavit of SA Klingman. 18 U.S.C. § 2703(a). Likewise, the magistrate found good cause to delay notification of the warrant for 90 days pending any extension request showing good cause. 18 U.S.C. § 3103a(b).

Respectfully Submitted,

McGREGOR W. SCOTT
United States Attorney

DATED: August 18, 2008   By: _____
JILL M. THOMAS
Assistant U.S. Attorney

**ORDER**

The Court finds that immediate notification of the execution of the warrant would inform the targets of the investigation, provide them with an opportunity to flee, allow them to destroy or tamper with evidence, or seriously jeopardize the investigation. 18 U.S.C. §§ 2705; 3103a(b). The Court finds that a 90 day extension from the first delay in notifying the target of the seizure and subsequent search of the information contained in the cellular phones is a reasonable period of delay. 18 U.S.C. § 3103a(b)(3). It is hereby ordered that notification to the target regarding the seizure of the text messages shall occur on or before November 14, 2008 unless reasonable cause is found to extend such deadline.

**SO ORDERED.**

DATE: 8/18/08

HON. DALE A. DROZD
U.S. Magistrate Judge

3

# Affidavit in Support of a Search Warrant

## I. Introduction

I, David A. Klingman, being duly sworn, depose and state as follows:

>I am currently employed as a Special Agent with the Drug Enforcement Administration (DEA), United States Department of Justice, and have been so employed since December 2004. In that capacity, I investigate violations of the Controlled Substances Act, Title 21, United States Code, Section 801, et. seq. I am currently assigned to the Sacramento District Office (SDO), Enforcement Group One. I have completed sixteen (16) weeks of DEA Basic Agent training at the DEA Academy in Quantico, Virginia. I am familiar with investigations of drug trafficking organizations, methods of importation and distribution of controlled substances, and financial investigations. I have participated in numerous investigations involving organizations trafficking in controlled substances which have resulted in arrests of drug traffickers and seizures of controlled substances. This training included instruction in the investigation of federal drug violations including Title 21 of the United States Code. I have completed training provided by DEA involving the use, possession, packaging, manufacturing, sale, concealment, and transportation of various controlled substances. I have interviewed numerous distributors and users of methamphetamine, cocaine, heroin, MDMA, and marijuana.

## II. Items to Be Searched and Scope of Search

1. I make this Affidavit in support of a search warrant to obtain numeric, word and picture identifiers such as serial numbers or other identifying numbers, names, nicknames, telephone numbers, pager numbers, fax numbers, cellular telephone numbers, dates and times of recent call activity, passwords, text messages, photographs, and other numbers associated with individual names from the following cellular telephones:
   **-One maroon Motorola cellular telephone ("flip phone"), found on Eliazar Barraza TORRES;**
   **-One silver Motorola Razr cellular telephone ("flip phone), found on Agustin Torres BELTRAN;**
   **-One white and black Motorola I425 cellular phone, found on Agustin Torres BELTRAN;**
   **-One black Motorola cellular telephone ("flip phone"), found on Agustin Torres BELTRAN,**

All the above cellular telephones are **described in Attachment A, and were located on the above listed person's and subsequently seized.** The cellular telephones were taken into custody by the Lodi Police Department and submitted into evidence for safekeeping and later transferred to the DEA.

1

2. The above cellular telephones were seized on May 6, 2008, subsequent to the arrest of Eliazar Barraza TORRES and Agustin Torres BELTRAN in Lodi, California by officers of the Lodi Police Department. TORRES and BELTRAN have been charged with violations of California Health and Safety Codes 11378, Possession of controlled substance for sale, 11379(B), Transport/Distribution of controlled substance and violation of California Penal Code 182 (A) (1), and Conspiracy.

3. I believe that the cellular telephones identified in Attachment A of this Affidavit contain evidence and instrumentalities (Attachment B) of the conspiracy to distribute methamphetamine, in the form of items such as contraband in the form of pictures, text messages, numbers, words, names and other such data that constitutes evidence of the same conspiracy, and the cellular telephones themselves are property designed for use, intended for use, and have been used in committing the conspiracy to distribute methamphetamine.

### III. Facts Establishing Probable Cause to Believe the above listed Motorola Cellular Telephones Contain Evidence, Instruments, and Other Such Evidence of a Methamphetamine Conspiracy

4. On May 6, 2008, the Lodi Police Department arrested an individual for methamphetamine distribution. The individual decided to assist the police and became a Confidential Source (hereinafter "CS"). The CS worked as a CS on May 6 to possibly receive consideration in his/her case. On May 6, 2008 later that day and after the CS was arrested, the CS contacted a methamphetamine source of supply and ordered four ounces of crystal methamphetamine during a recorded telephone call. In the past, approximately 3-4 times per day, 4 days per week, the source of supply would send drug runners out to meet the CS to deliver the ¼ pound crystal methamphetamine and it was typically the same two individuals (this happened before the CS became a CS on May 6, 2008). The CS stated he/she would be able to identify the runners when they arrived at the predetermined meet location, which was room number 136 at the Holiday Inn located in Lodi, California. At this time, the Lodi Police Department established surveillance and an arrest team at the Holiday Inn. The CS has a lengthy criminal history of convictions including forgery, controlled substance violations, false checks, fraudulent use of a telephone,

5. Approximately twenty-five minutes later, surveillance observed a silver Honda sedan arrive at the meet location and the CS positively identified the occupants as the drug runners (later identified as TORRES and BELTRAN). Then, officers observed BELTRAN exit the driver's side door and TORRES exited the passenger's door of the Honda. Officers observed TORRES and BELTRAN approach room number 136 and begin knocking on the door.

6. At this time, officers approached TORRES and BELTRAN and were placed in handcuffs. A subsequent search of BELTRAN resulted in the seizure of approximately one quarter pound of methamphetamine contained in five separate plastic baggies located in his right pants pocket, three Motorola cellular telephones (listed above) from his left front pocket and approximately $985.00 U.S Currency from his person. A subsequent search of TORRES resulted in the seizure of approximately $1,524.00 U.S Currency from his wallet and one maroon Motorola cellular telephone (listed above) from his pants pocket.

7. Officers later conducted a field test of the substance seized from BELTRAN and discovered it contained the presence of methamphetamine.

8. Based on my training and experience large amounts of cash and the related denominations (mostly $100s and $20s) are indicative of subjects involved in narcotics sales and trafficking. Drug trafficking is a cash business and I have noticed a pattern of traffickers using the above-described denominations. When traffickers deal with large amounts of narcotics, they tend to deal in larger denominations like 100s and 20s because of the cost of the narcotics. It is also common for subjects involved in narcotics to carry multiple cell phones. The more phones the subjects have, the harder it is for law enforcement to track and trace. Some phones relate to their business of narcotics and other phones may only relate to personal business.

9. In my training and experience, criminals use mobile telephones to communicate with one another, either by voice or text message. Mobile telephones preserve memory a history of incoming, outgoing, and missed calls, which can lead to evidence of the telephone numbers of other criminals and the dates and times that they and/or the mobile telephone user dialed one another's telephones. Mobile telephones also preserve in memory a telephone or address book. This allows the user to store telephone numbers and other contact information; the information stored in a telephone used by a criminal is evidence of the associations of the criminal, some of which are related to his or her criminal conduct. Mobile telephones also store in memory text messages sent, received, and drafted by the mobile telephone user. The text message history of a criminal's mobile telephone can contain evidence of crime because it shows the communications or planned communications of a criminal and the telephone numbers of those with whom the criminal communicated or intended to communicate. Mobile telephones also have a voicemail function that allows callers to leave messages when the telephone user does not answer. Criminals sometimes leave voice messages for each other and this is evidence both of their mutual association and possibly their joint criminal activity. Mobile telephones can also store other user-entered data files such as "to-do" lists, which can provide evidence of crime when used by a narcotics trafficker. Mobile telephones can also contain photographic data files, which can be evidence of criminal activity when the user was a narcotics trafficker who took pictures of evidence of crime. Mobile telephone companies also store the data described in this paragraph on their own servers and associate the data with particular users' mobile telephones.

3

## IV. Post arrest statement of BELTRAN

10. Lodi Police officers read BELTRAN his Miranda rights in Spanish and BELTRAN stated he understood his rights and was willing to answer some questions. The following is some information provided by BELTRAN.

11. BELTRAN stated he was a drug runner and would receive $50.00 to $100.00 per delivery. BELTRAN stated he worked for a drug dealer named "El Dopo" and received a telephone call from "El Dopo" on May 6, 2008. During the telephone call, "El Dopo" told BELTRAN to meet "El Dopo" at the intersection of Highway 99 and Acampo Road, which BELTRAN did. During the meeting, BELTRAN stated he received a quantity of drugs and was told by "El Dopo" to deliver the drugs to room number 136 at the Holiday Inn and collect the money, which BELTRAN agreed. BELTRAN also told officers that the money found on his person was money he had earned from delivering drugs.

12. TORRES did not wish to answer any questions.

## V. Probable Cause Statement

Based upon the facts set forth above, as well as my training and experience, there is probable cause to believe that the cellular telephones found on the person of Eliazar Barraza TORRES and Agustin Torres BELTRAN during their arrest on May 6, 2008, identified as;

**-One maroon Motorola cellular telephone ("flip phone"),** found on Eliazar Barraza TORRES;

**-One silver Motorola Razr cellular telephone ("flip phone),** found on Agustin Torres BELTRAN;

**-One white and black Motorola I425 cellular phone,** found on Agustin Torres BELTRAN;

**-One black Motorola cellular telephone ("flip phone"),** Found on BBELTRAN (initials) contain evidence and instrumentalities of the conspiracy to distribute methamphetamine, contraband in the form of pictures, text messages, numbers, words, names and other such data that constitutes evidence of the same conspiracy, other co-conspirators and the cell phones themselves are property designed for use, intended for use, and have been used in committing the conspiracy to distribute methamphetamine in violation of 21 U.S.C. §§ 841 (a) (1) and 846.

13. Therefore, I respectfully request authority to search for numeric, word and picture identifiers, including serial numbers or other identifying numbers, names, nicknames, telephone numbers, pager numbers, fax numbers, cellular telephone numbers, dates and times of recent call activity, passwords, text messages, photographs, and other numbers associated with the above Motorola cellular telephones, which Lodi police officers seized

4

and placed into their custody on May 6, 2008.

14. On May 16, 2008, I drove to the Lodi Police Department to retrieve the said cell phones from the Lodi Police Department evidence room. I signed a property transfer form to obtain the cell phones. The cell phones are currently locked in the Sacramento DEA evidence room.

## VI. Delayed Notice Justification

15. There is a DEA undercover investigation involving certain drug associates of BELTRAN and TORRES. The undercover investigation began in September 2007 and is not expected to be completed until the later part of 2008. In fact, DEA sought T-III authorization on May 19, 2008 and DEA is expected to begin wire interception on Beltran's and Torres' associates by May 23, 2008. It is believed that the associates may discontinue use of their phones if BELTRAN and TORRES learn about law enforcement searching their phones and the contents since the associates' contact information is likely contained in BELTRAN's and TORRES' phone. It is possible that BELTRAN and TORRES may then inform the associates of law enforcement searching the contents of the phones.

16. Pursuant to 18 U.S.C. § 3103a(b), your affiant seeks authorization to delay the provision of notice or the leaving of the search warrants with affected parties, normally required by Fed. R. Crim. P. 41(d), until the conclusion of the investigation or at a time determined by future order of the Court.

17. Providing a copy of the warrant to the affected parties would immediately alert the parties of law enforcement activity and that an arrest or law enforcement seizure is imminent. The current drug trafficking investigation is continuing. Providing notice before law enforcement have adequately concluded its investigation would undermine the investigation and have an adverse result as defined in 18 U.S.C. § 2705.

18. I believe that any type of notification would:
    (A) provide the subjects of this investigation and others participating in drug trafficking activities on behalf of, or with, them an opportunity to flee before law enforcement could apprehend them;
    (B) allow for the destruction of or tampering with evidence.
    (C) seriously jeopardize an investigation because the undercover investigation would become known to the targets.

5

19. Consistent with 18 U.S.C. § 3103a(b)(3), this application requests that the warrant provide for the giving of notice "within a reasonable period of its execution, which period may thereafter be extended by the court for good cause shown." It is therefore requested that the notification of the search warrant be delayed for 90 days until August 18, 2008, pending any extension request showing good cause.

David A. Klingman, Special Agent
Drug Enforcement Administration


Sworn and subscribed before me
This 20 day of May, 2008

GREGORY G. HOLLOWS
HONORABLE GREGORY G. HOLLOWS
United States Magistrate Judge

Approved as to form:

5-26-08
JILL M. THOMAS
Assistant United States Attorney

6